# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

REINALDO AGRON VALENTÍN,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 16-1683 (MEL)

## OPINION AND ORDER

Pending before the court is Reinaldo Agron Valentín's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying his application for disability benefits. Plaintiff contends that the administrative law judge erred in discounting the opinions of Dr. Héctor Vargas, the treating physician, Dr. Japhet Gaztambide, the treating psychiatrist, and Dr. Armando Caro, the examining source, and that the administrative law judge posed hypothetical questions to the vocational expert that did not accurately reflect all his limitations.

### I. PROCEDURAL AND FACTUAL BACKGROUND

On October 5, 2011, Plaintiff filed an application for Social Security benefits alleging that on July 19, 2011 ("the onset date"), he became unable to work due to disability. Tr. 531.[1] Plaintiff met the insured status requirements of the Social Security Act through December 31, 2016. Tr. 79. Prior to becoming unable to work, Plaintiff was a material handler and stocker. Tr. 135. The claim was denied on June 7, 2012, and upon reconsideration on June 12, 2013. Tr. 174; 178. Thereafter, Plaintiff requested a hearing, which was held on May 6, 2014 before Administrative Law Judge Richard Ortiz Valero (hereafter "the ALJ"). Tr. 101. On August 28, 2014, the ALJ issued a written

---

[1] "Tr." refers to the transcript of the record of proceedings.

decision finding that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 19, 2011, through the date of this decision." Tr. 94. Thereafter, Plaintiff requested review of the ALJ's decision. Tr. 72. Plaintiff's request for review was denied by the Appeals Council, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1. Plaintiff filed a complaint on March 29, 2016. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 24–25.

## II. LEGAL STANDARD

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). An individual is deemed to be disabled under the Social Security Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that the plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step.

20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether the plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether the plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether the plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then the plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether the plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that the plaintiff's impairment or impairments do prevent him from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether the plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that the plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

### III. THE ALJ'S DETERMINATION

In the case at hand, the ALJ found in step one of the sequential process that Plaintiff had not engaged in substantial gainful activity since the alleged onset date, July 19, 2011. Tr. 81. At step two, the ALJ determined that Plaintiff "has the following severe impairments: major depression,

lumbar and cervical discogenic disease, muscle spasms, lumbar radiculopathy, scoliosis, disc bulge at C5-C6 indenting the spinal cord, disc bulge at L4-L5 with encroachment upon the thecal sac and both nerve roots, disc bulge at L3-L4 with mild central canal stenosis, L5-S1 spodylolisthesis, cervical osteoarthritis, high blood pressure, and status post lumbar fusion." Id. (citations omitted). At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. 82. Next, the ALJ determined that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that the claimant is limited to lifting and carrying up to 20 pounds occasionally and 10 pounds frequently. He is restricted to standing and walking for up to six hours in an eight-hour workday and sitting for up to six hours in an eight-hour workday. The claimant is limited to occasional stooping, crouching, crawling, and climbing ladders, ropes, and scaffolds. He is restricted to frequent balancing, kneeling, and climbing of ramps and stairs. The claimant is limited to jobs involving simple and repetitive tasks with occasional interaction with the public and frequent interaction with coworkers and supervisors.

Tr. 83. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform any past relevant work. Tr. 92. At step five, the ALJ presented Plaintiff's RFC limitations, as well as his age, education, and work experience to a vocational expert. The vocational expert testified, taking all of these factors into account, that an individual would be able to perform the requirements of the following representative occupations: assembler, electronic worker, and sifter. Tr. 93. Because there is work in the national economy that Plaintiff can perform, the ALJ concluded that he is not disabled. Id.

## IV. ANALYSIS

Plaintiff challenges the ALJ's decision with regard to steps four and five of the sequential process. First, Plaintiff argues that the ALJ erroneously discounted the opinions of Dr. Vargas, the treating physician, Dr. Gaztambide, the treating psychiatrist, and Dr. Caro, the examining source.

Second, Plaintiff argues that the ALJ posed hypothetical questions to the vocational expert that did not accurately reflect all his limitations.

### 1. Plaintiff's claim that the ALJ erroneously discounted the opinions of the treating physician and the treating psychiatrist.

Plaintiff contends that the ALJ should have given more weight to the opinions of the treating physician, Dr. Vargas, and the treating psychiatrist, Dr. Gaztambide, when determining Plaintiff's RFC. In his opinion, the ALJ stated that he "d[id] not give controlling weight to Dr. Héctor Vargas's opinion because this opinion is vague and it is inconsistent with other substantial evidence in the record." Tr. 85. He also stated that he "d[id] not give controlling weight to [Dr. Gaztambide's] opinion because there is substantial evidence—namely, Dr. [Jennifer] Cortés's opinion—that shows a different level of severity and establishes specific work-related activities." Tr. 86.

The disability determination process generally gives "more weight to medical opinions from [a claimant's] treating sources." 20 C.F.R. § 404.1527(c)(2). However, the ALJ is not *required* to give controlling weight to the opinions of treating physicians. Barrientos v. Sec'y of Health & Human Servs., 820 F.2d 1, 2–3 (1st Cir. 1987); Rivera-Tufino v. Comm'r of Soc. Sec., 731 F. Supp. 2d 210, 216 (D.P.R. 2010). Rather, the ALJ can give less weight to a treating physician's opinion if he has good reason to do so. Pagán-Figueroa v. Comm'r of Soc. Sec., 623 F. Supp. 2d 206, 210–211 (D.P.R. 2009) (citing Carrasco v. Comm'r of Soc. Sec., 528 F. Supp. 2d 17, 25 (D.P.R. 2007)). Specifically, the ALJ may disregard the treating physician's opinion when it is "not supported by medically acceptable clinical laboratory techniques, or [is] otherwise unsupported by the evidence." Sánchez v. Comm'r of Soc. Sec., 270 F. Supp. 2d 218, 221–22 (D.P.R. 2003) (citing Greenspan v. Shalala, 38 F.3d 232, 237 (5th Cir. 1994)). This remains true regardless of whether the source of the evidence is a non-treating doctor. Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 n.1 (1st Cir. 1988) (citing Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 130 (1st Cir. 1981)).

An examination of the record confirms that Dr. Vargas's opinion is inconsistent with other evidence.[2] On June 13, 2011, Dr. Merbil González found normal motor, sensory, and reflex functioning, as well as normal gait. Tr. 818. Two months later, in August 2011, Dr. Vargas examined Plaintiff and found normal motor strength. Tr. 839. On December 16, 2011, an Electromyogram Test (EMG) revealed that Plaintiff did not have a neuromuscular disease. Tr. 887. The following year, on July 11, 2012, Plaintiff underwent decompression and fusion surgery to treat disc herniations at L4-L5 and L5-S1. Tr. 705. On November 15, 2012, Plaintiff had moderate pain but was feeling better. Tr. 289–90. His upper and lower extremities were functioning normally. Tr. 290. By January 31, 2013, Plaintiff's upper and lower extremities were still functioning normally. Tr. 291. Several months later, on May 15, 2013, Dr. Roberto Hau performed a consultative examination. Dr. Hau observed that while there was diminished lumbar range of motion, Plaintiff appeared to exaggerate it. Tr. 782. Plaintiff's gait was normal, he did not use any assistive device, and he had normal muscle strength in both legs and hands. Tr. 775. A straight leg raise test was negative. Tr. 782. Finally, on January 17, 2014, physicians performed another EMG that again revealed no evidence of neuromuscular disease. Tr. 903.

Dr. Gatzambide's opinion is similarly inconsistent with other evidence in the record. For example, Dr. Gatzambide's own progress notes reveal that Plaintiff remained free of delusions or suicidal ideations. Tr. 916; 919-26. He appeared cooperative during most progress notes. Tr. 916; 919-26. Plaintiff's thought process remained intact, with no evidence of racing thoughts, flight of

---

[2] Plaintiff argues that Dr. Vargas's opinion is entitled to greater weight than those of the other physicians because he is an orthopedic specialist. This argument is not tenable. See Prosch v. Apfel, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal citations omitted) ("Prosch argues that the opinion of Dr. Crowe, an orthopedic specialist, is entitled to greater weight than the opinions of the other physicians of record because of 20 C.F.R. § 404.1527(d)(5), which provides that the opinion of a specialist is accorded greater weight than the opinion of a general physician. We have held, however, that this rule does not apply where the opinion of the specialist is controverted by substantial evidence or is otherwise discredited. Because Dr. Crowe's opinion was contrary to other substantial medical evidence, it accordingly was not entitled to special deference under section 404.1527(d)(5).").

ideas, loose associations, or circumstantial thinking. Tr. 916; 919-26. Plaintiff remained oriented in time, place, and person. Tr. 308. Similarly, Dr. Caro found that Plaintiff was able to maintain good eye contact and had fluid, coherent, and logical speech. Tr. 786. Plaintiff denied auditory and visual hallucinations and was free of delusions. Tr. 786.

In sum, substantial evidence supports the ALJ's decision to discount the opinions of both Dr. Vargas and Dr. Gatzambide.

**2. Plaintiff's claim that the ALJ erroneously discounted a portion of the examining source's opinion.**

Plaintiff contends that the ALJ should have given more weight to a portion of Dr. Caro's opinion when determining Plaintiff's RFC. Dr. Caro opined that Plaintiff has a Global Assessment of Functioning (GAF) score of 50 to 55.[3] Dr. Caro also noted that Plaintiff's social interaction was impaired. The ALJ determined that Plaintiff was limited to jobs involving simple and repetitive tasks with occasional interaction with the public and frequent interaction with coworkers and supervisors. In so doing, the ALJ stated that he gave partial weight to Dr. Caro's opinion because it had inconsistencies concerning the severity of the mental impairment and because Dr. Cortés's opinion (which mirrored the ALJ's RFC finding) was more consistent with the record. Thus, the ALJ appears to have discounted a different portion of the opinion (Plaintiff's GAF score) than the portion Plaintiff focuses on (his social interaction). This is corroborated by the fact that the ALJ's RFC finding, which limits Plaintiff to occasional interaction with the public, is not inconsistent with the notion that Plaintiff's social interaction is impaired.

---

[3] The GAF "is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). A GAF score of 51–60 "indicates moderate symptoms (e.g., flat affect and circumlocutory speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." Negrón v. Colvin, Civ. No. 13-1926 (CVR), 2015 WL 1499144, at *4 n.4 (D.P.R. Apr. 1, 2015).

### 3. Plaintiff's claim that the ALJ posed hypothetical questions to the vocational expert that did not accurately reflect all his limitations.

Plaintiff contends that the ALJ posed hypothetical questions to the vocational expert that did not accurately reflect all his limitations. Specifically, Plaintiff argues that Dr. Gaztambide and Dr. Caro each assigned Plaintiff a GAF score, which should have been presented to the vocational expert. However, as discussed above, the ALJ discounted Dr. Gaztambide's opinion, as well as the portion of Dr. Caro's opinion concerning Plaintiff's GAF score. Thus, the ALJ was under no obligation to incorporate the GAF scores assigned to Plaintiff into the hypothetical question he posed to the vocational expert. See Vélez-Pantoja v. Astrue, 786 F. Supp. 2d 464, 469 (D.P.R. 2010) ("It is well within the ALJ's authority to weigh the evidence, to determine the credibility of the plaintiff's subjective complaints, and to use only credible evidence in posing a hypothetical question to a vocational expert.").

Based on the foregoing analysis, the court concludes that the decision of the Commissioner was based on substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 14th day of January, 2019.

s/Marcos E. López
U.S. Magistrate Judge